**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALLEN BENNETT | ) | CASE NO. |
| 633 Hoyt Street SW | ) | |
| Warren, Ohio 44485, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| EXEL INC. D/B/A DHL SUPPLY CHAIN | ) | |
| 9300 Jefferson Street | ) | **JURY DEMAND ENDORSED** |
| Streetsboro, Ohio 44241 | ) | **HEREIN** |
| | ) | |
| **Serve Also:** | ) | |
| Exel Inc. | ) | |
| CT Corporation System | ) | |
| 4400 Easton Commons Way | ) | |
| Suite 125 | ) | |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| JAMES LOWE | ) | |
| 9300 Jefferson Street | ) | |
| Streetsboro, Ohio 44241 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| ROB JOHNSON | ) | |
| 9300 Jefferson Street | ) | |
| Streetsboro, Ohio 44241, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Allen Bennett, by and through undersigned counsel, as his Complaint against

Defendants Exel Inc. d/b/a DHL Supply Chain ("DHL"), James Lowe, and Rob Johnson, states

and avers the following:

**PARTIES, VENUE, & JURISDICTION.**

1.  Bennett is a resident of the city of Warren, Trumbull County, Ohio.

2.   DHL is a foreign corporation that does business at 9300 Jefferson Street, Streetsboro, Portage County, Ohio 44241 ("Streetsboro Location").

3.   DHL is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

4.   Lowe is a resident of the state of Ohio.

5.   Lowe was plant manager at the Streetsboro Location.

6.   Johnson is a resident of Trumbull County, Ohio.

7.   Johnson was a supervisor at the Streetsboro Location.

8.   This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Bennett is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; 42 U.S.C. § 1981; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

9.   All material events alleged in this Complaint occurred in Delaware County, Ohio.

10.  This Court has supplemental jurisdiction over Bennett's state law claims pursuant to 28 U.S.C. § 1367 as Bennett's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

12.  Within 300 days of the conduct alleged below, Bennett filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00461 against DHL ("Bennett EEOC Charge").

13.  Bennett dually filed the Bennett EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

14. On or about September 29, 2022, the EEOC issued a Notice of Right to Sue letter to Bennett regarding the Bennett EEOC Charge.

15. Bennett received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

16. Bennett has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

17. Bennett has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

18. Bennett has properly exhausted his administrative remedies pursuant to R.C. § 4112.052.

## FACTUAL ALLEGATIONS.

19. In or about November 2019, Bennett began working for DHL.

20. DHL initially employed Bennett as a stocker/picker.

21. In or about February 2020, DHL promoted Bennett to inventory clerk.

22. Bennett worked on the night shift at DHL's Westerville Location.

23. Bennett is African American.

24. Bennett is 63 years old.

25. Lowe was plant manager at the Streetsboro Location.

26. Lowe did not participate in the decision to hire Bennett.

27. Lowe is Caucasian.

28. In or about February 2020, Rob Johnson became Bennett's supervisor.

29. Johnson is Caucasian.

30. Johnson is significantly younger than Bennett.

31. Johnson is younger than Bennett by a margin of more than 10 years.

32. In or about March 2020, Johnson told Bennett that Bennett was "too old to be in inventory."

33. In or about April 2020, Johnson told Bennett that Johnson "didn't want any Blacks on the night shift."

34. DHL has an email address for employees to send reports of coworkers' and supervisors' misconduct, called the "Code of Conduct" email.

35. On or about April 28, 2020, Bennett sent an email to DHL's Code of Conduct email, reporting race and age discrimination ("First Report of Discrimination").

36. DHL has a policy against discrimination.

37. DHL did not give Johnson a verbal warning as a result of the First Report of Discrimination.

38. DHL did not give Johnson a written warning as a result of the First Report of Discrimination.

39. DHL did not give Johnson a final warning as a result of the First Report of Discrimination.

40. DHL did not give Johnson a suspension as a result of the First Report of Discrimination.

41. DHL did not give Johnson a demotion as a result of the First Report of Discrimination.

42. DHL did not terminate Johnson's employment as a result of the First Report of Discrimination.

43. DHL did not discipline Johnson at all as a result of the First Report of Discrimination.

44. In or about May 2020, Bennett reported race and age discrimination to Theresa Lane ("Second Report of Discrimination").

45. Lane was an area human resources manager for DHL.

46. DHL did not give Johnson a verbal warning as a result of the Second Report of Discrimination.

47. DHL did not give Johnson a written warning as a result of the Second Report of Discrimination.

48. DHL did not give Johnson a final warning as a result of the Second Report of Discrimination.

49. DHL did not give Johnson a suspension as a result of the Second Report of Discrimination.

50. DHL did not give Johnson a demotion as a result of the Second Report of Discrimination.

51. DHL did not terminate Johnson's employment as a result of the Second Report of Discrimination.

52. DHL did not discipline Johnson at all as a result of the Second Report of Discrimination.

53. On or about June 10, 2020, Bennett reported race and age discrimination to Lowe ("Third Report of Discrimination").

54. DHL did not give Johnson a verbal warning as a result of the Third Report of Discrimination.

55. DHL did not give Johnson a written warning as a result of the Third Report of Discrimination.

56. DHL did not give Johnson a final warning as a result of the Third Report of Discrimination.

57. DHL did not give Johnson a suspension as a result of the Third Report of Discrimination.

58. DHL did not give Johnson a demotion as a result of the Third Report of Discrimination.

59. DHL did not terminate Johnson's employment as a result of the Third Report of Discrimination.

60. DHL did not discipline Johnson at all as a result of the Third Report of Discrimination.

61. On or about July 2, 2020, Bennett injured his knee at work ("Injury").

62. As a result of the Injury, Johnson drove Bennett to the hospital.

63. On or about July 2, 2020, on the car ride to the hospital, Johnson said to Bennett, "I don't know why they would want to treat a Black rapist." (Hereinafter, the "Hospital Comment").

64. Bennett is not a rapist.

65. Johnson made the Hospital Comment because of Bennett's race.

66. Johnson made the Hospital Comment in retaliation for Bennett's reporting of discrimination.

67. Johnson made the Hospital Comment intentionally.

68. Johnson made the Hospital Comment willfully.

69. The Hospital Comment would deter a reasonable person from reporting discrimination.

70. The Hospital Comment was an adverse action.

71. On or about July 3, 2020, Bennett reported the Hospital Comment to Lowe ("Fourth Report of Discrimination").

72. In response to the Fourth Report of Discrimination, Lowe said, "You know how [Johnson] is; he is just kidding."

73. DHL did not give Johnson a verbal warning as a result of the Fourth Report of Discrimination.

74. DHL did not give Johnson a written warning as a result of the Fourth Report of Discrimination.

75. DHL did not give Johnson a final warning as a result of the Fourth Report of Discrimination.

76. DHL did not give Johnson a suspension as a result of the Fourth Report of Discrimination.

77. DHL did not give Johnson a demotion as a result of the Fourth Report of Discrimination.

78. DHL did not terminate Johnson's employment as a result of the Fourth Report of Discrimination.

79. DHL did not discipline Johnson at all as a result of the Fourth Report of Discrimination.

80. On or about July 23, 2020, Johnson assigned Bennett the task of finding items in inventory ("Wild Goose Chase").

81. Bennett spent his shift attempting to find the items in the Wild Goose Chase.

82. The items in the Wild Goose Chase did not exist.

83. At the end of his shift, Bennett realized that the items in the Wild Goose Chase did not exist.

84. When Johnson assigned Bennett the Wild Goose Chase, Johnson knew that the items did not exist.

85. Johnson gave Bennett the Wild Goose Chase because of his race.

86. Johnson gave Bennett the Wild Goose Chase because of his age.

87. Johnson gave Bennett the Wild Goose Chase in retaliation for his reporting discrimination.

88. Johnson gave Bennett the Wild Goose Chase intentionally.

89. Johnson gave Bennett the Wild Goose Chase willfully.

90.  The Wild Goose Chase would deter a reasonable person from reporting discrimination.

91.  The Wild Goose Chase was an adverse action.

92.  On or about July 23, 2020, while Bennett was working, someone vandalized Bennett's car in the DHL parking lot ("Vandalism").

93.  Bennett discovered the Vandalism after he left work.

94.  On or about July 23, 2020, no cars other than Bennett's were vandalized in the DHL parking lot.

95.  Someone committed the Vandalism because of Bennett's race.

96.  Someone committed the Vandalism because of Bennett's age.

97.  Someone committed the Vandalism in retaliation for Bennett's reporting discrimination.

98.  Someone committed the Vandalism intentionally.

99.  Someone committed the Vandalism willfully.

100.  The Vandalism would deter a reasonable person from reporting discrimination.

101.  The Vandalism was an adverse action.

102.  On or about July 23, 2020, Bennett reported the Vandalism to DHL.

103.  On or about July 23, 2020, Bennett reported the Vandalism to the police.

104.  On or about October 9, 2020, DHL terminated Bennett's employment ("Termination").

105.  On or about October 9, 2020, Lowe told Bennett about the Termination ("Termination Meeting").

106.  In the Termination Meeting, Lowe said that the reason for the Termination was that Bennett had misplaced items in DHL's system ("Stated Reason").

107.  Bennett did not misplace items.

108.  The Stated Reason had no basis in fact.

109.  Bennett did not receive a verbal warning before the Termination.

110. Bennett did not receive a written warning before the Termination.

111. Bennett did not receive a final warning before the Termination.

112. The Stated Reason was not the real reason for the Termination.

113. The Stated Reason was not a sufficient basis to justify the Termination.

114. The Stated Reason was pretextual.

115. DHL replaced Bennett with an employee who was significantly younger than Bennett and/or under age 40.

116. DHL has a progressive disciplinary policy ("Discipline Policy").

117. A verbal warning is the lowest level of discipline in the Discipline Policy.

118. Bennett did not receive a verbal warning before the Termination.

119. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

120. Bennett did not receive a written warning before the Termination.

121. A termination is the highest level of discipline in the Discipline Policy.

122. DHL knowingly skipped progressive disciplinary steps in terminating Bennett's employment.

123. DHL knowingly terminated Bennett's employment.

124. DHL knowingly took an adverse employment action against Bennett.

125. DHL knowingly took an adverse action against Bennett.

126. DHL intentionally skipped progressive disciplinary steps in terminating Bennett.

127. DHL intentionally terminated Bennett's employment.

128. DHL intentionally took an adverse employment action against Bennett.

129. DHL intentionally took an adverse action against Bennett.

130. DHL knew that skipping progressive disciplinary steps in terminating Bennett's employment would cause Bennett harm, including economic harm.

131. DHL knew that terminating Bennett's employment would cause Bennett harm, including economic harm.

132. DHL willfully skipped progressive disciplinary steps in terminating Bennett's employment.

133. DHL willfully terminated Bennett's employment.

134. DHL willfully took an adverse employment action against Bennett.

135. DHL willfully took an adverse action against Bennett.

136. On or about October 9, 2020, DHL terminated Bennett's employment because of his race.

137. On or about October 9, 2020, DHL terminated Bennett's employment because of his age.

138. On or about October 9, 2020, DHL terminated Bennett's employment because he opposed discrimination.

139. As a direct and proximate result of Defendants' conduct, Bennett suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII
**(Asserted Against Defendant DHL Only).**

140. Bennett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

141. Throughout his employment, Bennett was fully competent to perform his essential job duties.

142. Defendants treated Bennett differently than other similarly-situated employees based on his race.

143. Defendants violated Title VII by discriminating against Bennett's employment due to his race.

144. On or about October 9, 2020, DHL terminated Bennett's employment without just cause.

145. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

146. Defendants terminated Bennett's employment based on his race.

147. Defendants violated Title VII when they terminated Bennett's employment based on his race.

148. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Bennett has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

149. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Bennett has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

150. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Bennett, and was done with conscious disregard of Bennett's civil rights, entitling Bennett to an award of punitive damages.

151. To remedy the violations of the rights of Bennett secured by Title VII, Bennett requests that the Court award him the relief demanded below.

**COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***
**(Asserted Against Defendant DHL Only).**

152. Bennett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

153. Throughout his employment, Bennett was fully competent to perform his essential job duties.

154. Defendants treated Bennett differently than other similarly-situated employees based on his race.

155. Defendants violated R.C. § 4112.02(A) *et seq.* by discriminating against Bennett's employment due to his race.

156. On or about October 9, 2020, DHL terminated Bennett's employment without just cause.

157. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

158. Defendants terminated Bennett's employment based on his race.

159. Defendants violated R.C. § 4112.01 *et seq.* when they terminated Bennett's employment based on his race.

160. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Ohio R.C. § 4112.02, Bennett has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

161. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Ohio R.C. § 4112.02, Bennett has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

162. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Ohio R.C. § 4112.02, was outrageous and malicious, was intended to injure Bennett, and was

done with conscious disregard of Bennett's civil rights, entitling Bennett to an award of punitive damages.

163. To remedy the violations of the rights of Bennett secured by Ohio R.C. § 4112.02, Bennett requests that the Court award him the relief demanded below.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981
### (Asserted Against All Defendants).

164. Bennett restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

165. Throughout his employment, Bennett was fully competent to perform his essential job duties.

166. Defendants treated Bennett differently than other similarly-situated employees based on his race.

167. Defendants violated 42 U.S.C. § 1981 by discriminating against Bennett's employment due to his race.

168. On or about October 9, 2020, DHL terminated Bennett's employment without just cause.

169. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

170. Defendants terminated Bennett's employment based on his race.

171. Defendants violated 42 U.S.C. § 1981 when they terminated Bennett's employment based on his race.

172. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Bennett has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

173. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Bennett has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

174. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Ohio Section 1981, was outrageous and malicious, was intended to injure Bennett, and was done with conscious disregard of Bennett's civil rights, entitling Bennett to an award of punitive damages.

175. To remedy the violations of the rights of Bennett secured by Section 1981, Bennett requests that the Court award him the relief demanded below.

## COUNT IV: AGE DISCRIMINATION IN VIOLATION OF ADEA.
### (Asserted Against Defendant DHL Only).

176. Bennett restates each and every prior paragraph of this Complaint, as if it were fully restated herein

177. Bennett was 60 years old at the time of his termination.

178. At all times relevant, Bennett was a member of a statutorily-protected class under the ADEA.

179. Defendants treated Bennett differently from other similarly-situated employees based on his age.

180. At all times herein, Bennett was fully qualified for his position and employment with Defendants.

181. After terminating Bennett's employment, Defendants replaced Bennett with a person who was significantly younger and/or not belonging to the protected class under the ADEA.

182. Defendants violated the ADEA by discriminating against Bennett based on his age.

183. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADEA, Bennett has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

184. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADEA, Bennett has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

185. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Ohio the ADEA, was outrageous and malicious, was intended to injure Bennett, and was done with conscious disregard of Bennett's civil rights, entitling Bennett to an award of punitive damages.

186. To remedy the violations of the rights of Bennett secured by the ADEA, Bennett requests that the Court award him the relief demanded below.

**COUNT V: AGE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***
**(Asserted Against Defendant DHL Only).**

187. Bennett restates each and every prior paragraph of this Complaint, as if it were fully restated herein

188. Bennett was 60 years old at the time of his termination.

189. At all times relevant, Bennett was a member of a statutorily-protected class under R.C. § 4112.14(B).

190. Defendants treated Bennett differently from other similarly-situated employees based on his age.

191. At all times herein, Bennett was fully qualified for his position and employment with Defendants.

192. After terminating Bennett's employment, Defendants replaced Bennett with a person who was significantly younger and/or not belonging to the protected class under R.C. § 4112.01 *et seq.*

193. Defendants violated R.C. § 4112.01 *et seq.* by discriminating against Bennett based on his age.

194. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Ohio R.C. § 4112.02, Bennett has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

195. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Ohio R.C. § 4112.02, Bennett has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

196. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Ohio R.C. § 4112.02, was outrageous and malicious, was intended to injure Bennett, and was done with conscious disregard of Bennett's civil rights, entitling Bennett to an award of punitive damages.

197. To remedy the violations of the rights of Bennett secured by Ohio R.C. § 4112.02, Bennett requests that the Court award him the relief demanded below.

## COUNT VI:  RETALIATION IN VIOLATION OF TITLE VII

198. Bennett restates each and every prior paragraph of this complaint, as if it were fully restated herein.

199. As a result of Defendants' discriminatory conduct described above, Bennett complained about the discrimination he was experiencing.

200. Subsequent to Bennett's  reporting of discrimination, Johnson made the Hospital Comment.

201. Subsequent to Bennett's  reporting of discrimination, Johnson assigned Bennett the Wild Goose Chase.

202. Subsequent to Bennett's  reporting of discrimination, DHL terminated Bennett's employment.

203. Defendants' actions were retaliatory in nature based on Bennett's opposition to the unlawful discriminatory conduct.

204. Pursuant to Title VII, it is an unlawful discriminatory activity to retaliate against an employee for opposing discrimination.

205. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Bennett has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

206. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Title VII, Bennett has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

207. Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Bennett, and was done with conscious disregard of Bennett's civil rights, entitling Bennett to an award of punitive damages.

208. To remedy the violations of the rights of Bennett secured by Title VII, Bennett requests that the Court award him the relief demanded below.

## COUNT VII:  RETALIATION IN VIOLATION OF 42 U.S.C. § 1981
### (Asserted Against All Defendants).

209. Bennett restates each and every prior paragraph of this complaint, as if it were fully restated herein.

210. As a result of Defendants' discriminatory conduct described above, Bennett complained about the discrimination he was experiencing.

211. Subsequent to Bennett's  reporting of discrimination, Johnson made the Hospital Comment.

212. Subsequent to Bennett's  reporting of discrimination, Johnson assigned Bennett the Wild Goose Chase.

213. Subsequent to Bennett's  reporting of discrimination, DHL terminated Bennett's employment.

214. Defendants' actions were retaliatory in nature based on Bennett's opposition to the unlawful discriminatory conduct.

215. Pursuant to 42 U.S.C. § 1981, it is an unlawful discriminatory activity to retaliate against an employee for opposing discrimination.

216. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Bennett has suffered and continues to suffer monetary and/or economic

damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

217. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Bennett has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

218. Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Ohio Section 1981, was outrageous and malicious, was intended to injure Bennett, and was done with conscious disregard of Bennett's civil rights, entitling Bennett to an award of punitive damages.

219. To remedy the violations of the rights of Bennett secured by Section 1981, Bennett requests that the Court award him the relief demanded below.

**COUNT VIII:  RETALIATION IN VIOLATION OF R.C. § 4112.02(I)**
**(Asserted Against All Defendants).**

220. Bennett restates each and every prior paragraph of this complaint, as if it were fully restated herein.

221. As a result of Defendants' discriminatory conduct described above, Bennett complained about the discrimination he was experiencing.

222. Subsequent to Bennett's  reporting of discrimination, Johnson made the Hospital Comment.

223.  Subsequent to Bennett's  reporting of discrimination, Johnson assigned Bennett the Wild Goose Chase.

224. Subsequent to Bennett's  reporting of discrimination, DHL terminated Bennett's employment.

225. Defendants' actions were retaliatory in nature based on Bennett's opposition to the unlawful discriminatory conduct.

226. Pursuant to Ohio R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

227. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Ohio R.C. § 4112.02(I), Bennett has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

228. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Ohio R.C. § 4112.02(I), Bennett has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

229. Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Ohio R.C. § 4112.02(I), was outrageous and malicious, was intended to injure Bennett, and was done with conscious disregard of Bennett's civil rights, entitling Bennett to an award of punitive damages.

230. To remedy the violations of the rights of Bennett secured by Ohio R.C. § 4112.02(I), Bennett requests that the Court award him the relief demanded below.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Allen Bennett respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i)      Requiring DHL to abolish discrimination, harassment, and retaliation;

    (ii)     Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring DHL to restore Bennett to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Bennett for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Bennett claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Allen Bennett*

## JURY DEMAND

Plaintiff Allen Bennett demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**